FILED IN CHAMBERS
U.S.D.C. - Atlanta

OCT 1 4 2014

James N. Hatten, Clerk
By: /s/ AmCaulc Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

TRACY MASON,

        Plaintiff,

v.

DEPUTY T. RANDOLPH, *an officer with the DeKalb County Sheriff's Office as an individual*; DEPUTY D. WILLIAMS, *an officer with the DeKalb County Sheriff's Office as an individual*; and SERGEANT P. MASSELLI, *an officer with the DeKalb County Sheriff's Office as an individual*,

        Defendants.

CIVIL ACTION NO.
1:13-CV-1965-ODE

ORDER

This case alleging, inter alia, violations of Plaintiff Tracy Mason's ("Plaintiff") Fourth Amendment rights is currently before the Court on Deputy T. Randolph ("Randolph"), Deputy D. Williams ("Williams"), and Sergeant P. Masselli's ("Masselli") (collectively, "Defendants") Motion to Dismiss Plaintiff's First Amended Complaint [Doc. 22]. For the reasons set forth below, Defendants' Motion to Dismiss is GRANTED.

I. **Background**

    A. *Factual Background*[1]

On or about October 25, 2012, at approximately 12:45 a.m., Defendants Randolph and Williams knocked on Plaintiff's door. They were looking for Druen Mason ("Mason"), for whom they had an

---

[1]The facts set forth below are taken from the First Amended Complaint [Doc. 19].

arrest warrant [Doc. 19 ¶¶ 5, 39]. Mason, who is Plaintiff's nephew, was wanted for failure to appear [Id. ¶ 5]. The arrest warrant application, signed by an Aaron's Sales and Lease manager, stated that Mason had failed to return leased items [Id. ¶ 36]. The application listed two addresses for Mason, one of which was Plaintiff's, and included testimony that the manager had previously tried to contact Mason at Plaintiff's address but was unsuccessful [Id.]. According to the First Amended Complaint, Mason did not live at Plaintiff's residence and was not there at the time the Defendants arrived [Id. ¶ 10]. Randolph and Williams did not have a search warrant [Id. ¶ 12].

William Bullock ("Bullock"), Plaintiff's cousin, answered the door [Id. ¶ 7]. Randolph and Williams demanded consent to enter the home, but Bullock refused [Id. ¶¶ 13-14]. Randolph and Williams then threatened that if Bullock did not give his consent, they would leave to obtain a search warrant [Id. ¶ 15]. Bullock again refused to give consent, even after Randolph and Williams threatened to arrest him for obstruction [Id. ¶¶ 16-18].

At some point, Plaintiff came to the front door [Id. ¶ 18]. Randolph and Williams again demanded consent, but Plaintiff refused out of fear for the safety of his 14-year-old son who was sleeping upstairs [Id. ¶¶ 19-20]. Randolph and Williams then forced their way into the residence [Id. ¶ 22]. Masselli, who had initially gone to the back of the house, followed them inside [Id. ¶¶ 6, 22-23]. Randolph and Williams then searched the home, while Masselli detained Plaintiff and Bullock downstairs [Id. ¶¶ 24-27].

After the deputies left, Plaintiff called 911 to report the search of the location "without [a] Search Warrant" [Id. ¶ 30]. Bullock also filed an internal affairs report [Id. ¶ 32].

### B.   *Procedural History*

On June 12, 2013, Plaintiff filed the instant lawsuit. Plaintiff's original complaint contained two counts, a claim pursuant to 42 U.S.C. § 1983 for the illegal search of his home and seizure of his person against all Defendants (Count One) and a state law false imprisonment claim against Defendant Masselli (Count Two) [Doc. 1].

On October 4, 2013, Defendants filed their original motion to dismiss Plaintiff's claims, or in the alternative, for a more definite statement under Federal Rule of Civil Procedure 12(e) [Doc. 9]. This Court ordered Plaintiff on May 2, 2014 to provide a "more definite statement of Plaintiff's claims" and to include in the amended complaint "information known to Plaintiff concerning the address listed on Mason's arrest warrant" [Doc. 18 at 13]. The Court also denied Defendants' motion to dismiss without prejudice to Defendants' right to re-file after receiving Plaintiff's amended Complaint [Id. at 14].

On May 23, 2014, Plaintiff filed his First Amended Complaint, which indicated that Plaintiff was pursuing a § 1983 claim for illegal search against all Defendants (Count One) as well as a § 1983 illegal seizure claim (Count One) and state law false imprisonment claim (Count Two) against Masselli for his detainment of Plaintiff during the search [see Doc. 19]. Plaintiff also provided information regarding the addresses listed in the arrest warrant application but did not provide information as to the

address listed on the arrest warrant [Id. ¶ 36]. Plaintiff seeks compensatory and punitive damages and attorneys' fees [Id. at 9]. Defendants filed the instant Motion to Dismiss [Doc. 22] on June 23, 2014. Plaintiff filed a Response [Doc. 23] and Defendant replied Doc. 24].

## II. Defendants' Motion to Dismiss

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on the pending motion to dismiss, all of the well-pleaded factual allegations in the plaintiff's complaint must be accepted as true and construed in the light most favorable to the plaintiff. Young Apartments, Inc. v. Town of Jupiter, Fla., 529 F.3d 1027, 1037 (11th Cir. 2008).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted). More specifically:

> [A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations and internal quotation marks omitted). To survive a Rule 12(b)(6) motion, "the plaintiff's factual allegations, when assumed to be true, must be enough to raise a right to relief above the

4

speculative level." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1270 (11th Cir. 2009) (citation and internal quotation marks omitted).

### B.   Constitutional Claims

Defendants assert that they are entitled to dismissal of Plaintiff's constitutional claims on the basis of qualified immunity. Qualified immunity provides protection for government officials sued in their individual capacities as long as "their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

To receive qualified immunity, a public official must first show that he was acting "'within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991) (quoting Rich v. Dollar, 841 F.2d 1558, 1563 (11th Cir. 1988)). Entering a home with the purpose of making an arrest is part of the discretionary authority of a police officer. See Houston v. Tucker, 137 F. Supp. 2d 1326, 1334 (N.D. Ga. 2000) (Pannell, J.) (holding officer acting within discretionary authority when entering home pursuant to arrest warrant). This Court also concluded in its May 2, 2014 Order that Masselli's temporary detention of Plaintiff downstairs was also a discretionary function [Doc. 18 at 10-11]. Therefore, it is clear that Defendants were acting within the scope of their discretionary authority when they entered Plaintiff's home and detained Plaintiff during the search for Mason.

Defendants having shown that they were acting within their discretionary authority, the burden now shifts to Plaintiff to

5

show that qualified immunity is not warranted under a two-part test. Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1199 (11th Cir. 2007). "First, the plaintiff must establish that the defendant violated a constitutional right." Id. (citing McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. 2007)). The second part of the test requires Plaintiff to show that the constitutional right was clearly established at the time of the violation. Id. at 1199-1200.

In this case, Plaintiff has alleged that his constitutional rights were violated by Defendants' conduct in two ways: (1) by searching his home for Mason (who did not live there), armed with an arrest warrant for Mason, not a search warrant for Plaintiff's home; and (2) by Masselli detaining Plaintiff downstairs during the allegedly illegal search [Doc. 19].

### 1. Search in Violation of the Fourth Amendment

Defendants did not violate Plaintiff's constitutional rights by entering and searching his home for Mason pursuant to the arrest warrant.

"Warrantless searches and seizures inside a home are presumptively unreasonable." United States v. Bennett, 555 F.3d 962, 965 (11th Cir. 2009) (citing United States v. Bervaldi, 226 F.3d 1256, 1262 (11th Cir. 2000)). The Supreme Court set the standard for entry into residences based upon an arrest warrant in Payton v. New York, 445 U.S. 573, 603 (1980). There, the Court stated: "[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." Id.

The United States Court of Appeals for the Eleventh Circuit has held that <u>Payton</u> requires a two-part inquiry to determine if entry pursuant to an arrest warrant complies with the Fourth Amendment's proscription of unreasonable searches. See <u>United States v. Magluta</u>, 44 F.3d 1530, 1533 (11th Cir. 1995). "[F]irst, there must be a reasonable belief that the location to be searched is the suspect's dwelling." <u>Id.</u> "[S]econd, the police must have reason to believe that the suspect is within the dwelling." <u>Id.</u> (internal quotation marks omitted). Elaborating on this inquiry, the Eleventh Circuit explained that

> for law enforcement officials to enter a residence to execute an arrest warrant for a resident of the premises, the facts and circumstances within the knowledge of the law enforcement agents, when viewed in the totality, must warrant a reasonable belief that the location to be searched is the suspect's dwelling, and that the suspect is within the residence at the time of entry.

<u>Id.</u> at 1535. Furthermore, "common sense factors"--such as the time of day--should guide courts during a <u>Payton</u> inquiry. <u>Id.</u>

Here, the first part of the <u>Magluta</u> inquiry is satisfied. In his First Amended Complaint, Plaintiff alleges that one of two addresses given for Mason's residence on the warrant application was Plaintiff's home.[2] Even construing this fact in the light

---

[2]Defendants argue that Plaintiff's First Amended Complaint remains insufficient because he has failed to allege the address indicated on the arrest warrant, even though that information was made available to Plaintiff (through initial disclosures) prior to the filing of the First Amended Complaint [Docs. 22 & 24]. The Court notes that the warrant was in fact made available to Plaintiff prior to the filing of his First Amended Complaint, and yet, Plaintiff failed to allege the address listed in the warrant as specifically instructed by this Court in its May 2, 2014 Order [<u>see</u> Doc. 18]. Plaintiff provides no reason for failing to do so [Doc. 23]. The Court, however, finds Plaintiff's First Amended

most favorable to Plaintiff, the affiant's listing Plaintiff's address on the warrant application and stating it was the location at which he attempted to contact Mason clearly shows that Defendants had a reasonable belief that Mason resided at Plaintiff's home. See Payton v. City of Florence, Ala., 413 F. App'x 126, 131-32 (11th Cir. 2011) (holding no constitutional violation arose when officers entered and searched plaintiff's residence listed as address of suspect on some but not all of warrant package documents). The second part of the inquiry is also satisfied. Defendants conducted the search at approximately 12:45 a.m. when it would be reasonable to expect a person to be at his place of residence. See United States v. Acosta, 807 F. Supp. 2d 1154, 1260 (N.D. Ga. 2011) (Carnes, C.J.) (finding officers' expectation to find suspect at home during search at 6:00 a.m. was reasonable); United States v. Honeycutt, No. 2:12-CR-022-RWS-JCF, 2013 WL 5530601, at *7 (N.D. Ga. Mar. 29, 2013) (Story, J.) (finding officers had reasonable belief to find defendants at home at 4:00 a.m.). Therefore, the Court concludes that Plaintiff has not sufficiently alleged that Defendants violated his constitutional rights by entering and searching his home for Mason pursuant to a valid arrest warrant.

### 2. Seizure in Violation of the Fourth Amendment

Defendant Masselli, against whom Plaintiff brings his § 1983 illegal seizure claim, did not violate Plaintiff's constitutional rights by temporarily detaining him while Williams and Randolph searched for Mason.

---

Complaint sufficient to rule on the Defendants' Motion to Dismiss.

In Michigan v. Summers, 452 U.S. 692 (1981), the Supreme Court held that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain occupants of the premises while a proper search is conducted." Id. at 705 (footnote omitted). Given that a "neutral and detached magistrate [who] had found probable cause to believe that the law was being violated . . . authorized a substantial invasion of the privacy," a brief detention pursuant to that search, the Court reasoned, was "less intrusive than the search itself." Id. at 701. The Court also found the detention was supported by law enforcement interests, including preventing flight of incriminating evidence, minimizing the risk of harm to officers, and the orderly completion of the search. See id. at 702-03.

A number of courts have extended Summers to apply to the temporary detainment of individuals during the execution of a valid arrest warrant. See Cherrington v. Skeeter, 344 F.3d 631, 638 (6th Cir. 2003) ("[P]olice have the limited authority to briefly detain those on the scene, even wholly innocent bystanders as they execute a search or arrest warrant."); United States v. Enslin, 327 F.3d 788, 797 (9th Cir. 2003); Adams v. Springmeyer, -- F. Supp. 2d --, No. 11-790, 2014 WL 1785341, at *18 (W.D. Pa. May 5, 2014); Anderson v. United States, 107 F. Supp. 2d 191, 197 (E.D.N.Y. 2000) aff'd 41 F. App'x 506 (2d Cir. 2002); Freeman v. Gore, 483 F.3d 404, 412 (5th Cir. 2007) (stating in dicta that Summers would authorize deputies to detain anyone found at address during execution of arrest warrant); Lucas v. City of Boston, No. 07-CV-10979-DPW, 2009 WL 1844288, at *18 (D. Mass. June 19, 2009);

United States v. Gilliam, No. 06-00204-01-CR-W-GAF, 2007 WL 57250, at *5 (W.D. Mo. Jan. 8, 2007); Foulks v. Emery, No. Civ. 04-4122-JLF, 2006 WL 1457541, at *4 (S.D. Ill. May 23, 2006).

The Eleventh Circuit has not yet addressed whether the holding of Summers applies during the execution of arrest warrants as well as search warrants. In the absence of binding precedent, this Court is persuaded that Summers also authorizes the temporary detention of individuals residing within a house being entered under the authority of Payton. The Fourth Amendment requires that police actions in execution of a warrant be related to the objectives of the authorized intrusion. Wilson v. Layne, 526 U.S. 603, 611 (1999). The Court finds this brief detention is related to the objectives of the arrest warrant and implicates law enforcement interests similar to those in Summers. Brief detentions pursuant to an arrest warrant minimize the risk of harm to officers and others present. Such detentions also prevent the detained individuals from possibly warning the suspect of the impending arrest, causing him to flee. These brief detentions may also facilitate the arrest by inducing detainees to assist in locating the suspect to "avoid the use of force that is not only damaging to property but may also delay" the execution of the warrant. Summers, 452 U.S. at 703. Therefore, Masselli was authorized to briefly detain Plaintiff and Bullock, as the entry into the home was permissible under Payton and Magluta.

Thus, the Court finds that Plaintiff has failed to sufficiently plead a constitutional violation stemming from Masselli's temporary detainment of Plaintiff.

Assuming arguendo that Masselli had violated Plaintiff's constitutional rights through his detainment, Masselli would still enjoy qualified immunity from Plaintiff's claim because Plaintiff cannot show that such a violation was "clearly established" at the time of the violation as required by the Eleventh Circuit in Griffin Industries. In determining whether Masselli's actions violate a "clearly established" right, the Court considers "the law originating in this Circuit, as well as the Supreme Court, the courts of appeals, and the district courts." Leeks v. Cunningham, 997 F.2d 1330, 1333 (11th Cir. 1993). Thus, in assessing Masselli's qualified immunity claim, the inquiry is whether case law existed in October 2012 to clearly establish that an individual had a right under the Fourth Amendment to be free of temporary detention during the execution of a valid arrest warrant.

At the time of the alleged violation, neither the Supreme Court, the Eleventh Circuit or the district courts of the Eleventh Circuit had addressed whether a brief detention of individuals at an address listed in the warrant package during the execution of an arrest warrant constituted a violation. Further, three federal courts of appeals and four district courts had held that such a detention was reasonable under the Fourth Amendment. Therefore, the Court finds that this right was not clearly established at the time of the violation.

Accordingly, Defendants' Motion to Dismiss is GRANTED with respect to Plaintiff's § 1983 claims (Count One).

### C.  State Law False Imprisonment Claim

In Georgia, "[f]alse imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." O.C.G.A. § 51-7-20. "[T]he imprisonment need not be for more than an appreciable length of time, and . . . it is not necessary that any damage result from it other than the confinement itself . . . . It is essential, however, that the restraint be against the plaintiff's will[; . . . .]" J.H. Harvey Co. v. Speight, 178 Ga. App. 812, 813 (Ga. Ct. App. 1986) (citation and internal quotation marks omitted); see also Miraliakbari v. Pennicooke, 254 Ga. App. 156, 160 (Ga. Ct. App. 2002)("The restraint used to create the detention must be against the plaintiff's will and be accomplished by either force or fear.").

According to the First Amended Complaint, Plaintiff alleges he was detained against his will during the course of the search, and that he did not feel he was free to leave [Doc. 19 ¶¶ 46, 48]. Plaintiff also alleges that Masselli knew he had no legal right to detain Plaintiff because he threatened to leave to obtain a search warrant [Id. ¶¶ 50, 51]. Defendant Masselli, against whom the state law claim is asserted, argues that Plaintiff's false imprisonment claim nonetheless fails because Masselli's actions are shielded by official immunity [Doc. 22-1].

State law immunity principles govern pendent state law claims asserted under supplemental jurisdiction. D'Aguanno v. Gallagher, 50 F.3d 877, 879 (11th Cir. 1995). The doctrine of official immunity provides limited protection from personal liability for governmental officers and employees. Gilbert v. Richardson, 264

Ga. 744, 750 (Ga. 1994). This concept became embodied in the Georgia Constitution through a 1991 amendment:

> Except as specifically provided by the General Assembly in a State Tort Claims Act, all officers and employees of the state or its departments and agencies may be subject to suit and may be liable for injuries and damages caused by the negligent performance of, or negligent failure to perform, their ministerial functions and may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions. The provisions of this subparagraph shall not be waived.

Ga. Const. of 1983, Art. I, Sec. II, Par. IX(d).

Consequently, public officers and employees can only be subject to suit if they negligently perform their ministerial functions or if they act with malice or an intent to injure in the performance of their official functions. Gilbert, 264 Ga. at 753. The purpose of this protection is to promote the effective performance of discretionary functions which might otherwise be impaired by the fear of personal liability. Id. at 750.

Official functions include "any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts." Id. at 753. A ministerial act is generally "simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." Stone v. Taylor, 233 Ga. App. 886, 888 (Ga. Ct. App. 1998) (citation and internal quotation marks omitted). By comparison, discretionary acts invoke "the exercise of personal deliberation and judgment, which in turn entails

examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." Id.  To determine whether an action is ministerial or discretionary, courts should consider the character of the specific actions complained of, not the general nature of the job.  Id.

This Court has already concluded that Masselli's brief detention of Plaintiff was among Masselli's discretionary functions [Doc. 18 at 11].  The Court must therefore determine whether Plaintiff has sufficiently alleged that Masselli acted with malice toward Plaintiff or an intent to cause injury to him. See Ga. Const. of 1983, Art. I, Sec. II, Par. IX(d).

Plaintiff's only allegation of malice is that Defendants Williams and Randolph threatened to leave and return with a search warrant [Doc. 19 ¶ 51].  However, as Plaintiff is not pursuing his false detention claim against Williams and Randolph, their actions, whether malicious or not, are irrelevant in determining whether Defendant Masselli acted with malice or an intent to injure Plaintiff.  Plaintiff alleges no other facts supporting malice on the part of Masselli [see Doc. 19].  Therefore, the Court concludes that Plaintiff has failed to allege sufficient facts to overcome Masselli's official immunity under Georgia law. Accordingly, Defendants' Motion to Dismiss Plaintiff's state law false imprisonment claim (Count Two) is GRANTED.

III. **Conclusion**

For the reasons stated above, Defendants' Motion to Dismiss [Doc. 22] is GRANTED as to all of Plaintiff's claims.

14

SO ORDERED, this 14 day of October, 2014.

_____
ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE